Kirsten J. ANDERSON, individually and on behalf of all other persons similarly situated, Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE, Defendant-Appellee.

No. 80–1679.

United States Court of Appeals, Tenth Circuit.

Oct. 12, 1982.

Ann Yalman, Sante Fe, N. M., for plaintiff-appellant.

Albert N. Thiel, Jr., Asst. City Atty., Albuquerque, N. M., for defendant-appellee.

Sandra G. Bryan, Washington, D. C. (LeRoy D. Clark, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Paul E. Mirengoff, Attys., E. E. O. C., Washington, D. C., with her on brief), for amicus curiae for E. E. O. C.

Before SETH, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Kirsten Anderson instituted this class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* alleging that the City of Albuquerque discriminated on the basis of sex in its employment practices. The trial court denied Anderson's motion to certify the class. It also held that the position for which Anderson unsuccessfully applied was exempt from Title VII coverage under section 701(f), 42 U.S.C. 2000e(f), and in any event that no violation of Title VII had occurred with respect to her individual claim. On appeal Anderson contends that: (1) the court's refusal to certify the class was an abuse of discretion; (2) the court's determination that the position was exempt under section 2000e(f) was erroneous; and (3) the court failed to properly consider statistical evidence relevant to her individual claim. We agree and therefore reverse.

The facts giving rise to this suit are briefly as follows. Anderson, a white female, began working for the City of Albuquerque in October 1974, as a research analyst on the staff of the City's Human Rights Board. She was later promoted on the staff to director of public contracts. During her employment with the City she received her law degree and was licensed to practice in New Mexico. In June 1976, while still employed by the City, she learned that the staff director for the Human Rights Board was planning to resign and she applied for that position. In August 1976, Anderson voluntarily left her job with the City to accept a position as an assistant district attorney with the state. However, she did not withdraw her application for the staff director's position, and indicated that she still wished to remain under consideration. The selection of a male Hispanic to fill the position was made after Anderson resigned.

Anderson then instituted this class action under Fed.R.Civ.P. 23(a) and (b)(2), describing the class as "all females who have applied or will apply for jobs with Defendant, are employees with Defendant or are former employees of Defendant." Rec., vol. I, at 1. The complaint stated Anderson's individual claim and additionally alleged unlawful policies and practices by the City which deprive females of equal employment opportunities in recruitment, hiring, promotion, and other conditions of employment. Anderson sought injunctive and monetary relief individually and on behalf of the class.

I.

*Denial of Class Certification*

Initially we address the City's contention that Anderson lacks standing to appeal the denial of class certification. This argument is wholly without merit.

In *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), and *United States v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), the Supreme Court held that notwithstanding the named plaintiff's individual claim had become moot pending appeal, the plaintiff nonetheless had standing to appeal the district court's earlier denial of class certification. The facts in the instant case are even more persuasive in favor of standing. Here Anderson's indi-

vidual claim was decided against her at the trial level and is not moot on appeal. She clearly has standing to appeal the individual adverse determination and in so doing may appeal interlocutory orders decided against her below. "[A]n order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff . . . ." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *accord Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480 & n.6, 98 S.Ct. 2451, 2453 & n.6, 57 L.Ed.2d 364 (1978); *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 393 & n.13, 97 S.Ct. 2464, 2469 & n.13, 53 L.Ed.2d 423 (1977).

In its order denying certification, the district court concluded that Anderson could not adequately represent the class described in her complaint because she had voluntarily terminated her employment with the City prior to the act of alleged discrimination, citing *Hernandez v. Gray,* 530 F.2d 858 (10th Cir. 1976). However, the facts in *Hernandez* are distinguishable.

▉ In *Hernandez* the named plaintiffs had voluntarily resigned their jobs with the defendant city when it refused to recognize a union as their bargaining agent. Nevertheless, the plaintiffs sought to make an across-the-board attack on post-termination employment practices which could no longer affect them individually. Here, to the contrary, although Anderson voluntarily resigned her job with the City before the new staff director was selected, she did not withdraw her application for that position and indicated that she wished to remain under consideration. Moreover, she testified that prior to the time she resigned, she was told by the current staff director that the new director was being preselected and would be a male Hispanic. Anderson's voluntary termination was irrelevant to her ability to adequately represent the described class because she remained an applicant for City employment who could be affected by the alleged discriminatory practices. *Cf. Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)

(adequacy of representation depends on all circumstances of particular case).

▉ In its order denying certification, the trial court also noted its belief that Anderson could not prevail on her individual claim. If the denial of class certification was influenced by the court's preliminary evaluation of the merits of Anderson's claim, the court committed error. "[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). *See also Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975). " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Eisen,* 417 U.S. at 178, 94 S.Ct. at 2152 (quoting *Miller v. Mackey International, Inc.,* 452 F.2d 424, 427 (5th Cir. 1971)).

▉▉ Class action certification is a matter committed to the discretion of the trial court. *Monarch Asphalt Sales Co. v. Wilshire Oil Co.,* 511 F.2d 1073, 1077 (10th Cir. 1975). In this case we have rejected the only two bases in support of the denial of certification appearing in the district court's order. We must therefore conclude that the refusal to certify was an abuse of discretion, and remand this action to the district court for a redetermination whether the requirements of Rule 23 have been met.

▉ The Supreme Court has recently reiterated that " 'suits alleging . . . discrimination are often by their very nature class suits, involving classwide wrongs,' and that '[c]ommon questions of law or fact are typically present.' " *General Telephone Co. v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52

L.Ed.2d 453 (1977)). The City argues on appeal that Anderson does not meet the typicality requirements of Rule 23(a)(3). The district court did not address this contention. On remand, the court should keep in mind "the well established rule that the claims of all the class need not be identical to those of the plaintiffs or that all the class plaintiffs must be involved in identical work . . . ." *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 271 n.8 (10th Cir. 1975). *Accord Rich,* 522 F.2d at 340–41; *see also Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1274–76 (4th Cir. 1981); *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830–31 (8th Cir. 1977), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *see generally Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657 (E.D.Pa.1980). Based on an evidentiary hearing, the court must determine whether "the individual's claim and the class claims . . . share common questions of law or fact and [whether] the individual's claim will be typical of the class claims." *General Telephone,* —— U.S. at ——, 102 S.Ct. at 2371, 72 L.Ed.2d 740.

## II.

### *Exemption under Section 2000e(f)*

After trial on the merits of Anderson's individual claim, the district court concluded that the position of staff director for the Albuquerque Human Rights Board is exempt from Title VII coverage under 42 U.S.C. 2000e(f). Section 2000e(f) excludes from the definition of an "employee" covered by Title VII

> "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision."

■ The legislative history of this section states that Congress intended the exemption to be narrowly construed. *Joint Explanatory Statement of Managers at the Conference on H.R. 1746,* 92nd Cong.2d Sess., *reprinted in* 1972 *U.S.Code Cong. & Ad.News* 2179, 2180. The exemption does not apply unless the facts clearly establish that the person is: (1) an elected public official; or (2) chosen by an elected official to be on his personal staff; or (3) appointed by an elected official to a policy making position; or (4) an immediate advisor to an elected official regarding the exercise of the constitutional or legal powers of the elected office. *Id.; Gearhart v. Oregon,* 410 F.Supp. 597, 600 (D.Ore.1976).

The district court based its conclusion upon findings that the mayor has unlimited discretion to make the appointment, the position is not covered by city or state civil service provisions, and the "position involves, at least to some degree, advice to the Office of the Mayor with respect to the legal powers of the Mayor pertaining to the relevant human rights ordinances and/or the Human Rights Act." Rec., vol. I, at 203. The City contends that the staff director of the Human Rights Board is either an appointee at a policymaking level, or an immediate advisor with respect to the constitutional and legal powers of an elected official within the meaning of the exemption.

■ The staff director serves under the direction of the City's Chief Administrative Officer (CAO) and the members of the Human Rights Board. All of these individuals are themselves appointees. The job description of the position states that the staff director

> "Under the direction of the Chief Administrative Officer, serves as the principal administrative and staff assistant to the City of Albuquerque Human Rights Board. Takes action, under the authorization of the Human Rights Ordinance and as recommended by the Human Rights Board, in support and pursuit of the purposes of the Human Rights Ordinance. Directs and supervises other staff

assistance rendered to the Human Rights Board and its members."

Rec., vol. X, at Pl.Ex. 16. Following this general description, twelve typical duties are listed, none of which involves formulating policy or advising the mayor. The great weight of the evidence presented at trial was to the effect that policy under the Human Rights ordinance is formulated in fact by the Human Rights Board and implemented by the staff director through interaction with other appointed personnel.

Also, there is considerable question whether the staff director is chosen by the mayor. The Albuquerque Human Rights Ordinance, which created the Human Rights Board, provides that the CAO, an official who is appointed by the mayor, shall "[e]mploy, after consultation with the Human Rights Board, a staff director, and hire or cause to be hired such other employees for the Board as he/she may deem necessary." Rec., vol. X, Pl.Ex. 1. Indeed, the mayor's actual participation in the appointment at issue here was virtually nonexistent. The applicants were originally screened by an assistant to the CAO. They were then interviewed by the Human Rights Board and the names of the leading candidates were recommended to the CAO. The mayor did not establish criteria, review resumes, or interview applicants. The actual selection was made by the CAO who subsequently sought the mayor's concurrence "just to make sure that the mayor saw in the selection the kind of compatibility that any mayor would be looking for in his administration." Rec., vol. IV, at 194. While the mayor testified that as Chief Executive Officer of the City he is the final decision maker, he is not the official directly charged with appointing the staff director of the Human Rights Board. Based on this record, we do not believe that the staff director was in fact appointed by an elected official within the meaning of section 2000e(f).

■ Application of the exemption cannot be supported by the trial court's finding that the staff director has occasionally advised the mayor on his constitutional and legal powers. The staff director is not required to have a law degree, and is not attached to the City's legal office. Although the previous staff director was an attorney who occasionally gave the mayor unofficial legal advice, the director chosen to replace him does not have a law degree. In general, the staff director deals primarily with other appointees who are themselves advisors to the mayor. Direct interaction between the mayor and the staff director is minimal.

In any event, the position does not fit into the narrow exemption intended by Congress. Although the staff director is not subject to all the rights and guarantees of the City's merit system, that fact without more does not make the position exempt. See Owens v. Rush, 654 F.2d 1370, 1375 (10th Cir. 1981); Howard v. Ward County, 418 F.Supp. 494, 502 (D.N.Dak. 1976). The exclusion from coverage was intended "to exempt ... those who are chosen by the Governor or the mayor ..., whatever the elected official is, and who are in a close personal relationship and an immediate relationship with him. Those who are his first line of advisors." 118 Cong.Rec. 4492–93 (1972); see also Owens, 654 F.2d at 1375; Gearhart, 410 F.Supp. at 601. The nature and circumstances of the employment relationship between the staff director and the mayor do not demonstrate the intimate and sensitive association contemplated by the legislators who framed the exemption. See id.

■ In sum, considering the facts of this case and construing the exemption narrowly, we conclude that the staff director does not formulate policy or advise the mayor so as to create the immediate and personal relationship required by the exception. Accordingly, we hold that the exemption provided by section 2000e(f) does not apply to the position at issue here.

### III.

### The Individual Claim

Notwithstanding the district court's resolution of the exemption issue, it considered

and rejected Anderson's claim on the merits. Anderson contends that in so doing the court erroneously failed to admit and consider statistical evidence offered by her to rebut the City's articulation of a legitimate business reason for its failure to select her.

Anderson first sought admission of general statistical evidence on the City's hiring practices regarding women. The City objected to the admission, arguing that the statistics were not relevant to a single act of discrimination. The court noted that the "pattern and practice" aspect of Anderson's original complaint was no longer at issue due to the court's denial of class certification. The judge indicated doubt that the statistics were relevant to Anderson's individual claim although he admitted the evidence conditionally:

> "Well, I still have a problem with it .... But I'll tell you, I will conditionally admit [the statistics]. I have some misgivings about it. And in the event the Court feels that there is some materiality, I'll consider it. And in the event that I find it is not material, I will so state in my findings."

Rec., vol. IV, at 138–39. While the court may have subsequently evaluated this evidence, these statistics did not contain information on the number of female professionals or department heads.

Later in the trial, Anderson sought twice to admit specific testimony of the number of women serving as department heads with the City. During redirect examination of the former City mayor, plaintiff's counsel asked about the number of female agency and department heads at the time of the selection at issue here. The City objected on two grounds: that the evidence was beyond the scope of redirect, and that it was "infringing on [this] pattern and practice question." Rec., vol. IV, at 163. The trial court sustained the objection without comment. Subsequently, on *direct* examination of the former CAO, plaintiff's counsel inquired about the number of female department heads reporting to him. The City objected on the same basis and the court again sustained the objection without comment.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825 (1973), the Court stated that a plaintiff must "be afforded a fair opportunity to show that [the employer's] stated reason for [the employee's] rejection was in fact pretext." The Court went on to point out that relevant evidence on pretext includes the employer's "general policy and practice with respect to minority employment. On the latter point, statistics as to ... employment policy and practice may be helpful to a determination of whether [the employer's conduct] conformed to a general pattern of discrimination . . . ." *Id.* at 804–05, 93 S.Ct. at 1825–1826 (citing *Jones v. Lee Way Motor Freight, Inc.,* 431 F.2d 245 (10th Cir. 1970), *cert. denied,* 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971)). In *Weahkee v. Norton,* 621 F.2d 1080, 1083 (10th Cir. 1980), we said, "[w]hen the employer has come forward with legitimate nondiscriminatory reasons for the action contested, a plaintiff may rely on statistics to discredit the reasons the employer presented for its action." *See also Bauer v. Bailar,* 647 F.2d 1037, 1045 (10th Cir. 1981).

■ In a trial to the court, "the erroneous exclusion of evidence does not give rise to reversible error unless it can reasonably be said that not only was the excluded evidence in fact competent, but also that such exclusion precluded a fair trial." *James v. Newspaper Agency Corp.,* 591 F.2d 579, 583 (10th Cir. 1979). In this case probative evidence was presented both on the City's legitimate business reasons and on its discriminatory motive. A credibility determination was critical regarding an alleged statement by the assistant CAO which indicated discriminatory pre-selection of a male Hispanic. When upper level positions are being filled, often based on subjective evaluations, statistical evidence as to the overall hiring practices of the employer is especially significant. *See generally* Bartholet, *Application of Title VII to Jobs in High Places,* 95 Harv.L.Rev. 947 (1982). Under the circumstances of this case, statistical evidence regarding the City's employment

of female department heads would have been particularly pertinent, and the court's failure to properly consider it cannot be considered harmless error under *McDonnell Douglas* and its progeny. *See Donaldson,* 554 F.2d at 833. Accordingly, we conclude that the judgment on Anderson's individual claim must be reversed and remanded with directions that the trial court reopen the proceedings and permit the record to be supplemented with additional evidence by both Anderson and the City concerning the number of female department heads during the relevant period.

In addition, our review of this case is hampered by the district court's failure to evaluate the evidence in terms of the three-step analysis of a Title VII claim set out in *McDonnell Douglas* and refined in *Furnco Construction Co. v. Waters,* 438 U.S. 567, 575–78, 98 S.Ct. 2943, 2948–2950, 57 L.Ed.2d 957 (1978), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981). Findings of fact satisfy Fed. R. Civ. P. 52(a) "if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Lujan v. State of New Mexico Health & Social Services Department,* 624 F.2d 968, 970 (10th Cir. 1980). The trial court must make sufficient subsidiary factual findings to allow the reviewing court to "determine the steps by which [it] reached its ultimate conclusion on each factual issue." 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2579 at 710 (1971). The trial court's compliance with Rule 52(a) ensures that the court has carefully considered and adjudicated the facts in dispute. *Featherstone v. Barash,* 345 F.2d 246, 249 (10th Cir. 1965); 9 C. Wright, *supra,* § 2571 at 679–70.

A trial court's failure to couch its findings and conclusions in the precise language of the *McDonnell Douglas* test is not grounds for reversal if the reviewing court is satisfied that both parties were given full opportunity at trial "to address the issues as outlined in *McDonnell Douglas,* and [the issues] were decided for the defendant on a basis recognized by *McDonnell Douglas.*"

*Kentroti v. Frontier Airlines, Inc.,* 585 F.2d 967, 970 n.2 (10th Cir. 1978). Here, the court failed to cite *McDonnell Douglas* or any other authority as the legal basis upon which it evaluated the evidence. We cannot determine from the findings and conclusions whether the evidence was properly analyzed under the legal standards mandated by *McDonnell Douglas* and its progeny.

On remand, the court should take additional statistical evidence in connection with Anderson's individual claim, and then reevaluate all the evidence following the three-step analysis set out in *McDonnell Douglas* and other relevant Supreme Court cases. The reevaluation should include the validity of statistics and the proper inferences to be drawn therefrom. *See E.E.O.C. v. United Virginia Bank/Seaboard National,* 555 F.2d 403, 406 n.6 (4th Cir. 1977).

The action is reversed and remanded for further proceedings consistent with this opinion.

SETH, Chief Judge, dissenting:

The plaintiff had been employed by the City since 1974. She left voluntarily in 1976 to accept a position as an assistant district attorney for which she had applied before the application here considered had been acted upon. She previously had also applied for other positions with the City. Her reasons for leaving City employment were totally unrelated to any matter of discrimination. In this action plaintiff does not seek reinstatement but only damages and injunctive relief. She took a position she liked better than the one she had with the City before her application for promotion was acted upon and does not now seek to be placed in the City position for which she applied. After she left the City her application continued to be under consideration and she was one of the final three persons considered.

All the statistical data gathered by the plaintiff and which was offered was admitted. The City had assisted in assembling the material. By reason of a statement made by plaintiff's counsel at the class ac-

tion hearings as to what she sought to prove the data was admitted conditionally at first, but as the case was finally submitted there was no condition, and it went in with all the evidence and was considered for all purposes. The only evidence excluded related to the number of women department heads which plaintiff sought to elicit by questions put to the mayor but was initially excluded as improper cross-examination. When the question was again asked during questioning of the chief administrative officer it was again excluded. This is the only "statistical" evidence plaintiff can point to which was not admitted. There was no data presented as to the labor market, applicants, or anything else which would make the numbers relevant. This exclusion appears to be the basis for the appeal, and appears to be the factor used by the majority to reach its conclusion that there was not a fair trial. This was the "statistical evidence" the exclusion of which caused the majority to reverse, citing Bartholet, *Application of Title VII to Jobs in High Places,* 95 Harv.L.Rev. 947 (1982). The sustaining of the objection to the question thus precluded a fair trial under the majority view. It must again be pointed out that the plaintiff had been an employee of the City for a considerable time and was familiar with the machinery.

I can see no basis for the conclusion that plaintiff did not have a "fair trial." Plaintiff had a full and fair opportunity to present her case, she did so, and failed to come forward with facts or theories which could support her complaint. She had the opportunity once to present her case. There was nothing more than a failure of proof. What confusion as to proof there may have been can be traced to the statements made by plaintiff's attorney during the first class action hearing as to the nature of her case should class action be denied. The court asked plaintiff's counsel:

"Do you propose to present a pattern and practice case?"

Counsel replied:

"Yes, Your Honor, if we are certified as a class, not if we are not."

Again, the fair trial theory can only be related to the department head evidence. This, in my view, cannot be enough. The proof by the City was clear and demonstrated that the applicant chosen was the best qualified. The plaintiff in no way faults the basic procedure used. The position was an unclassified one. The trial court resolved the questions of credibility which arose and which were relatively unimportant. There is no requirement that it must comment on credibility issues in any way, as plaintiff urges, nor make findings thereon.

When plaintiff left City government her pending application became that of a non-employee seeking employment by the City in a non-scheduled position. The class described in the complaint, if I understand it correctly, is composed of all women employees of the City past, present, and future. It is difficult to accept this as a description of a class suitable for consideration under Rule 23, especially as to the future employees. The opinion of the Supreme Court in *General Telephone Co. v. Falcon,* —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740, does not describe any new factors under Rule 23, but it certainly emphasizes the clear and strong showing which must be made by the plaintiff as to each of the requirements under the rule. This she did not do.

The plaintiff does not assert that she was discriminated against by reason of her sex during her employment by the City, nor in her unsuccessful application as either an advisor for the City police department, or as an assistant City attorney. Her only assertions and claims are directed to the fact she was not hired as director of the Human Rights Board. This again was the equivalent of a department head and was an unclassified position. She complained of the failure by the City to select her—an outside job applicant—for the position of a department head. This indeed could only be a small and narrow segment of City employees.

Plaintiff's description of a class to include all future women City employees is really not a description of a class at all. I would thus affirm the trial court's ruling on the

class action issue on different grounds than expressed by the court.

I must take exception to the last several paragraphs of the majority opinion relating to the remand. The rules relating to findings of fact and conclusions of law govern all cases including Title VII cases. Our opinions on the subject describe what the findings and conclusions should contain under the rules. *See Lujan v. State of New Mexico Health & Social Services Department,* 624 F.2d 968 (10th Cir.). The rules and decisions are not directed to a particular type of case. I find it difficult to ascertain a reason for the requirement that the findings and conclusions in this case be in a particular form. The majority takes the position that the *McDonnell Douglas* case requires a certain ritual as to the findings and conclusions, and requires the trial judge to make certain recitations. There are very many important Supreme Court cases on many subjects, but each of these does not require that a certain or special form be followed in the findings by the trial judge. The rules control all findings and conclusions.

I must dissent from the majority opinion on the merits and as to the directions on remand.