James L. **ANDREWS**, Plaintiff,

v.

**CITY OF JOHNSTOWN**, Defendant.

Civ. A. No. 85–1891.

United States District Court,
W.D. Pennsylvania.

Aug. 31, 1987.

**128**

Yablonski, Costello & Leckie, Washington, Pa., for plaintiff.

Kenneth Rizzo, Johnstown, Pa., for defendant.

## FINDINGS OF FACT

GERALD J. WEBER, District Judge.

This Title VII action alleging race discrimination in employment was tried nonjury following the McDonnell Douglas format. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). The evidence established that defendant is an employer as defined by Title VII, 42 U.S.C. § 2000e(b), and that plaintiff is black, belonging to a racial minority intended to be protected by Title VII. Plaintiff was qualified for the job of Enterprise Development Coordinator, having earned an MBA and being a doctoral candidate for a Ph.D. in business administration. The position was given instead to a lesser qualified white person, Mr. Houck, on or about February 13, 1984. Plaintiff's testimony that he would have applied for the job opening had he been made aware of it was unrebutted. Plaintiff's testimony that despite disability for heavy work, he was able to undertake the type of light work involved in this position was unrebutted. Plaintiff further provided unrebutted evidence that defendant, City of Johnstown, had adopted and implemented an Affirmative Action Plan on August 11, 1982 which required, in pertinent part, that all job openings will be advertised in the local media and distributed to those agencies and organizations which may assist in the recruitment of qualified minorities. The Plan also required that the City's Affirmative Action Officer be notified of job openings at least five days before any action on the position was taken. It is unrebutted that the City failed to follow its own Affirmative Action Plan in hiring for the position in question, failed to inform the City's Affirmative Action Officer or to advertise the position. The plaintiff provided testimony showing that he maintained a resume on file with the Affirmative Action Council in Johnstown which was one of the organizations that defendant would have consulted had the Affirmative Action Plan been followed. Thus, had defendant followed its own procedures, plaintiff would have learned of the opening and would have applied for the position. Plaintiff of-

fered evidence of defendant's deliberate failure to follow its Affirmative Action Plan to show defendant's intent to avoid hiring persons of plaintiff's race in contravention of the commitment expressed in the Plan and in violation of Title VII. Plaintiff first learned of the position when the hiring of Mr. Houck was announced in the local newspaper on February 15, 1984. After investigation of defendant's actions, plaintiff filed a timely charge of discrimination with the EEOC and the EEOC rendered a right to sue letter, finding cause to believe that defendant had, in fact, discriminated against plaintiff because of his race in filling the Enterprise Development Coordinator position.

In rebuttal, defendant presented the testimony of Herbert Pfuhl, Jr., who was Mayor of Johnstown both at the time of the trial and in 1984 during the time the events in question took place. The Mayor testified that he had known Mr. Houck before his hiring and that Mr. Houck had a resume on file with the City. Mayor Pfuhl appointed Mr. Houck upon the recommendation of the department head. The Mayor had not directed that any particular person be hired, nor had he reviewed any of the resumes personally. It was the director's responsibility to follow the proper affirmative action procedures, when necessary, and the Mayor had no reason to believe that Houck's hiring was not properly done. The Mayor indicated that he considered the position in question to be policy-making, in part, and that there were time constraints in filling the position.

On cross-examination, the Mayor admitted that the grant for the position in question was approved on November 17, 1983 and indicated in response to the court's questioning, that the only reason for urgency in filling the position in February 1984 was to get the program started. The Mayor also admitted that the contract providing for the position in question was between the City and the Department of Community Affairs and that this type of contract typically included an Affirmative Action clause, although the Mayor did not know whether this contract contained such a clause. The Mayor did not specifically direct anyone that the Affirmative Action Plan be followed.

Also provided for the Court's review was an organizational chart which showed the lines of reporting of the Enterprise Development Coordinator within the Organization. The court concluded from the testimony and organizational chart that the position in question was not the type of policy making position which would ordinarily be exempt under the Affirmative Action Plan as a political appointment.

## CONCLUSIONS OF LAW

■ Plaintiff established a prima facie case. Despite the undisputed fact that plaintiff never applied for the position in question, non-applicants are not invariably foreclosed from relief if they meet the burden of showing that they would have applied for the job but for the discriminatory practices of the employer. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). This, plaintiff established by unrebutted testimony.

■ Defendants attempted to show legitimate business reasons for the failure to follow the Affirmative Action Plan by arguing that the position was not subject to affirmative action, that plaintiff had not applied for the position and therefore defendant never rejected or discriminated against him, and for that the urgency of the situation precluded taking the time necessary to follow the Affirmative Action Plan. However, the evidence did not support defendant's claim that the position of Enterprise Development Coordinator was a policy making position. The job requirements were ministerial in nature requiring implementation of guidelines of the Enterprise Development Area Initiative. All policy for the Initiative is set forth in the regulations governing it. *See Anderson v. City of Albuquerque,* 690 F.2d 796 (10th Cir.1982).

■ Neither did defendant establish by any evidence of record that the time constraints the City was under in hiring for

this position prevented the City from following its Affirmative Action plan.

■ The court in pretrial conferences with counsel for the parties had raised its concern that the suit was actually an attempt to enforce an Affirmative Action Plan and that this plaintiff may not have standing to bring such a suit. The court directed defendant's counsel to raise this issue by pretrial motion and to provide the court with a brief in this regard to which plaintiff would be permitted a responsive brief. However, such motion was never forthcoming, and at trial, defendant indicated that it had researched the issue and did not believe that plaintiff was in any way precluded from bringing suit despite the court's concerns. Plaintiff indicated that he was presenting the City's failure to follow its own Affirmative Action Plan merely as evidence of discriminatory intent.

■ The Court concludes that plaintiff succeeded by a preponderance of the evidence in rebutting defendant's reasons for its failure to advertise the position as required by the Affirmative Action plan. Plaintiff prevails on the ground that defendant's only asserted justifications were pretextual. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

### ORDER

AND NOW this 31st day of August 1987, in accordance with the accompanying Findings of Fact and Conclusions of Law as found by this court after a non-jury trial in this action, it is ORDERED that JUDGMENT be ENTERED in favor of plaintiff and against defendant in this action on liability. Because the evidence on damages is fragmentary the parties shall provide the court either with a stipulation of damages or such calculations and arguments as would permit the court to reach a determination on damages on or before September 18, 1987.