Jill M. CRUMPACKER, Plaintiff,

v.

KANSAS DEPARTMENT OF HUMAN RESOURCES, Defendant.

Case No. 00–4044–RDR.

United States District Court, D. Kansas.

May 16, 2002.

Gene P. Graham, Sr., Mary E. Compton, White, Allinder & Graham, L.L.C., Independence, MO, Timothy W. Monsees, Monsees, Miller, DeFeo, Mayer & Presley, Kansas City, MO, for Jill M. Crumpacker.

Eliehue Brunson, Office of Atty. Gen., Topeka, KS, Deanne Watts Hay, Stanley R. Parker, Parker & Hay, LLP, Topeka, KS, for Dept. of Human Resources, Kan.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action brought by the plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff asserts claims of sex discrimination and retaliation arising from her termination as a division director with the Kansas Department of Human Resources (KDHR). This matter is presently before the court upon defendant's motion for summary judgment and plaintiff's motion to strike.

### I.

The court will provide a brief review of the facts to provide some background for the arguments made by the defendant. The court will provide a more detailed review of some of the facts as we address the arguments raised by the plaintiff and defendant.

Plaintiff was hired by the State of Kansas on August 1, 1996 as Director of Employment and Training of the KDHR. Wayne Franklin was the Secretary of Human Resources. Plaintiff was one of four division directors at KDHR. She was the only female director. On July 20, 1998 and July 22, 1998, Secretary Franklin met with plaintiff concerning her job performance. On August 21, 1998, plaintiff responded with a thirteen-page letter to Secretary Franklin. Plaintiff was terminated in September 1998.

Prior to her hiring at KDHR, plaintiff was employed at the governor's office as governmental affairs liaison and then as senior legislative liaison. She worked at the governor's office from January 1995 through August 1996. Plaintiff has a B.S. degree in chemistry and a B.A. degree in biology. She also has a master's degree in public administration from the University of Kansas and a law degree from Washburn University. She has been a licensed attorney since 1995.

### II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. Id. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue

of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

### III.

In its motion for summary judgment, the State of Kansas makes three arguments. First, the defendant argues that it is entitled to summary judgment on all of plaintiff's claims because plaintiff was not an "employee" within the meaning and coverage of Title VII. Second, the defendant asserts that it is entitled to summary judgment on one of plaintiff's retaliation claims because plaintiff did not engage in a protected activity as defined by Title VII. Finally, the defendant argues that it is entitled to summary judgment on plaintiff's disparate treatment claim because plaintiff has failed to sustain her burden of proof.

### A.

■ The defendant contends that plaintiff was not an employee within the meaning of Title VII. The defendant argues that plaintiff was excluded from the definition of employee by reason of 42 U.S.C. § 2000e(f). This subsection excludes from the definition of employee the following:

any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

The language of § 2000e(f) excludes from the definition of employee and thus from the coverage of Title VII the following four types of non-civil service state employees: (1) persons elected to public office; (2) the personal staff of elected officials; (3) persons appointed by elected officials to be on the policymaking level; and (4) the immediate advisers of elected officials with respect to the constitutional or legal powers of the officials' offices. See *Gregory v. Ashcroft,* 501 U.S. 452, 481, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (White, J., concurring in part and dissenting in part) (analyzing identical language of definition of employee contained in ADEA).

The focus here is upon the third exception, i.e., whether plaintiff was a person appointed by an elected official to be on the policymaking level. The defendant points out that plaintiff was an unclassified political appointee whose hiring and salary were subject to the approval of the governor. The defendant further argues that plaintiff was involved in policymaking. The defendant contends that the Supreme Court's decision in *Gregory v. Ashcroft* requires that this court grant summary judgment to it if Title VII does not clearly show that plaintiff is an employee entitled to its protection. Plaintiff, relying on *Anderson v. City of Albuquerque,* 690 F.2d 796, 801 (10th Cir.1982), contends that she was neither appointed by an elected official nor did she serve in a policymaking role.

The court must begin by considering whether plaintiff was appointed by an elected official. Plaintiff was appointed pursuant to K.S.A. 75–5702 which provides as follows:

The secretary of human resources may appoint, with the consent of the governor, one public information officer, one or more division directors, one personal secretary and one special assistant, all of whom shall serve at the pleasure of the secretary of human resources, shall be in the unclassified service under the Kansas civil service act and shall receive annual salary fixed by the secretary of human resources with the approval of the governor. . . .

Based upon this statute, the defendant argues that plaintiff was appointed by the governor, an elected official, because his consent was necessary for the appointment. Plaintiff, on the other hand, suggests that she was appointed by the secretary of human resources, an appointed official, because he selected her for the position.

In *Anderson*, the staff director for the Albuquerque Human Rights Board sued the City of Albuquerque under Title VII for sex discrimination. The City contended that the plaintiff was not covered by Title VII because she was not an employee under 42 U.S.C. § 2000e(f). Plaintiff had been appointed to the position of staff director by the chief administrative officer (CAO) of the Human Rights Board. The appointment occurred after the applicants to the position were initially screened by an assistant to the CAO. They were then interviewed by the Human Rights Board, and the names of the leading candidates were sent to the CAO. The CAO had the discretion to make the selection, but he subsequently sought the mayor's approval "just to make sure that the mayor saw in the selection the kind of compatibility that any mayor would be looking for in his administration." Based upon that record,

the Tenth Circuit concluded that the staff director was not appointed by an elected official within the meaning of § 2000e(f). *Anderson*, 690 F.2d at 801.

Following *Anderson*, this court decided *Wanner v. State of Kansas*, 766 F.Supp. 1005 (D.Kan.1991). Neither side has discussed this case. The issues raised were similar to those raised here. There, Wanner was appointed as Assistant Director of the Division of Architectural Services by the Director of Architectural Services, an appointed position. He subsequently brought suit under ADEA, alleging that he was terminated because of his age. Wanner's position constituted unclassified service under the Kansas Civil Service Act. Under Kansas law, any appointment to unclassified service is subject to the approval of the governor, and compensation for such appointments cannot be paid until approved by the governor. The defendant contended that Wanner was not subject to the provisions of the ADEA because he was not an employee as defined in ADEA. The defendant argued that Wanner had been appointed by an elected official. This court disagreed. We stated: "Wanner is provided coverage under the ADEA because he was not appointed to the position of Assistant Director of the Division of Architectural Services by an elected official." *Wanner*, 766 F.Supp. at 1009.

In *Tranello v. Frey*, 962 F.2d 244 (2nd Cir.), cert. denied, 506 U.S. 1034, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992), a deputy county attorney brought suit against county executives under the ADEA. The deputy county attorney had been hired by the county attorney, who had been appointed by the county executive. The county executive, however, was an elected official. The district court denied summary judgment to the defendant on the basis of the policymaker exception. On interlocutory appeal, the Second Circuit considered the

precise issue raised by the defendant here. The court stated:

> The County also argues that while the County Attorney has the authority to appoint Deputy County Attorneys, this can be done only with the approval of the County Executive, who is an elected official. "Therefore," the County argues, "the appointment of plaintiff was by an elected official." We reject this attempt to characterize Tranello's appointment as being by an elected official as an overly strained effort to exclude Tranello from the coverage of the ADEA. "[T]he language and structure of the definition of 'employee' suggest that Congress meant the policymaker category to comprise only policymakers working closely with the elected official." [*EEOC v.*] *Vermont*, 904 F.2d [794] at 798 [ (2nd Cir.1990) ]. That is why the scope of the statutory exception is limited to persons appointed by elected officials. The mere fact that the County Executive must approve the County Attorney's appointee does not convince us that the appointee would be a "policymaker working closely with the elected official," and does not compel the conclusion that the Deputy County Attorney is an appointee of the County Executive. We refuse to stretch the language and purpose of the exception to reach so broadly, lest the exception swallow the rule and defeat the statutory purpose.

*Id.* at 250. See also *O'Neill v. Indiana Commission of Public Records*, 149 F.Supp.2d 582, 590 (S.D.Ind.2001) (deputy director of Indiana Commission of Public Records was employee covered by Title VII where she was appointed by Director of Indiana Commission on Public Records, an official appointed by the Governor, even though Indiana laws required that appointments made by Director be approved by the governor).

This court continues to believe that we correctly decided Wanner. We are not persuaded that subsequent case law, including *Gregory*, requires a different result. *Gregory* did not directly consider this issue, and we do not believe that the language in it should be read as broadly as the defendant suggests. Accordingly, we must conclude that plaintiff can seek relief under Title VII because she is an employee under the definition set forth in 42 U.S.C. § 2000e(f). She was not appointed by an elected official to her position. The mere fact that the governor had to consent to her appointment does not compel the conclusion that she was an appointee of an elected official. With this decision, the court need not consider whether she was on a policymaking level.

### B.

Plaintiff contends that she was terminated in retaliation for (1) a letter written to Secretary Franklin on August 21, 1998 complaining of gender discrimination and retaliation; and (2) reporting the improper use of a KDHR computer to visit pornographic websites. The defendant challenges plaintiff's second theory of retaliation.[1] The defendant argues that plaintiff cannot pursue this retaliation claim because she did not engage in protected activity as defined by Title VII. The defendant argues that plaintiff's report concerning the computer incident was not a reasonable good faith opposition to gender based discrimination or sexual harassment made unlawful under Title VII.

---

1. In its reply brief, the defendant makes a variety of arguments concerning plaintiff's retaliation theory based on the August 21st letter. The defendant also suggests that plaintiff cannot pursue this retaliation claim. The court does not intend to consider this issue because the defendant failed to raise it in its initial brief.

The facts underlying this claim are as follows: On June 19, 1998, one of plaintiff's subordinates was performing a routine maintenance check on one of the KDHR's laptop computers. During the course of the maintenance check, the employee discovered that over 800 inappropriate Internet sites, mostly pornographic websites, had been visited using the laptop. The dates of these visits occurred in July and August 1997 when it was checked out to A.J. Kotich, legal counsel for KDHR. Plaintiff reported the "computer incident" to Secretary Franklin. She claims that thereafter she was retaliated against and subsequently terminated.

■ Title VII establishes two categories of protected activity: participation and opposition. See 42 U.S.C. § 2000e–3(a) (prohibiting retaliation because an employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII"]). Here, plaintiff has asserted an opposition claim.

In *Shiwari v. Raytheon Aircraft Co.*, 215 F.3d 1337, 2000 WL 731782 at *5 (10th Cir.2000) (table decision), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 722 (2001), the Tenth Circuit reiterated that the standard in this circuit requires only that the employee have a "subjective, good faith" belief that Title VII has been violated. Contrary to the law in the Eleventh Circuit and in accord with the First Circuit, the Tenth Circuit does not require that the opposition activity be objectively reasonable. *Id.* Thus, the only question in determining whether plaintiff's complaints of discrimination constituted protected opposition is whether those complaints were made in good faith. *Id.*

The validity of *Shinwari* is somewhat questionable given the Supreme Court's subsequent decision in *Clark County* *School District v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam). In *Clark County,* the plaintiff argued that she was retaliated against for complaining to her supervisors about an incident that had taken place between her and her supervisor. During a meeting, plaintiff's supervisor read aloud a sexually explicit comment from an applicant's psychological evaluation report. Plaintiff's male supervisor looked at plaintiff, and stated, "I don't know what that means." Another employee replied, "Well, I'll tell you later," and both men chuckled. Plaintiff complained about the comment to the offending supervisor and other officials of defendant school district. She subsequently filed a Title VII retaliation claim, asserting that she was punished for these complaints. The district court granted summary judgment to the school district, but the Ninth Circuit reversed. The Supreme Court reversed the Ninth Circuit's holding that a genuine issue of fact existed as to whether plaintiff had engaged in protected activity by complaining to her employer about the incident. Relying upon its holdings in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) that "sexual harassment is actionable under Title VII only if it is 'so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment,'" the Court reasoned:

> The Court of Appeals for the Ninth Circuit has applied § 2000e–3(a) to protect employee "oppos[ition]" not just to practices that are actually "made ... unlawful" by Title VII, but also to practices that the employee could reasonably believe were unlawful. [*Breeden v. Clark County School District,* ]2000 WL 991821, at *1[ 2000] (stating that respondent's opposition was protected "if she

had a reasonable, good faith belief that the incident involving the sexually explicit remark constituted unlawful sexual harassment"); *Trent v. Valley Electric Assn., Inc.,* 41 F.3d 524, 526 (C.A.9 1994). We have no occasion to rule on the propriety of this interpretation, because even assuming it is correct, no one could reasonably believe that the incident recounted above violated Title VII. 532 U.S. at 270, 121 S.Ct. 1508.

The Clark Court had the opportunity to clarify whether an objective or subjective standard or both should be applied in determining whether the subject matter of an employee's complaint should receive protection under the opposition clause. The Court, however, failed to take this opportunity to resolve the split that exists among the Circuits. Nevertheless, the Court strongly implied that if the standard applicable to determining whether opposition activity is protected under the anti-retaliation clause of Title VII is the reasonableness of the plaintiff's belief that a supervisor's conduct was unlawful, that standard must be applied with an eye on precedent. While not specifically endorsing the objective standard of a plaintiff's belief, the Court's lengthy discussion of the threshold of severity and pervasiveness required before sexual harassment becomes actionable suggests that more may be required of a plaintiff than a mere showing that the average worker would perceive the complained of conduct as unlawful.

Having carefully reviewed the record, the court is persuaded that plaintiff, with her background and education, could not have reasonably believed that the computer misuse incident violated Title VII. The law is well-settled that the display of pornographic materials can create a hostile work environment under Title VII. Nevertheless, this well-established proposition cannot provide support for the plaintiff's contention that the mere presence of data on a computer that pornographic websites have been visited can create a sexually harassing hostile work environment under Title VII. Plaintiff has provided no case law to support such a rule, and we cannot find any either. Here, plaintiff had no information that any of the pornography had ever been displayed to anyone. She had not seen any of it, and she was unaware that it had been displayed to any other employee. Under such circumstances, we do not believe that plaintiff could reasonably believe that Title VII had been violated. Accordingly, the court finds that the defendant is entitled to summary judgment on this aspect of the summary judgment claim.

## C.

The defendant contends that plaintiff has failed to establish a claim of disparate treatment.[2] The defendant argues that plaintiff has not sufficiently demonstrated that she was terminated because of her sex.

Title VII prohibits employers from discriminating with respect to "terms, conditions, or privileges of employment," on account of an individual's race, color, religion, sex or national origin. § 42 U.S.C. § 2000e–2(a)(1). The standards for determining such claims are well-established. To prevail on her Title VII claim, plaintiff "must prove ... that [the defendant] had a discriminatory motive or intent." *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). She must demonstrate that her sex was the motivation for

---

**2.** The defendant initially also argued that plaintiff had failed to demonstrate a claim of sexual harassment under Title VII. Plaintiff responded that she was not making such a claim. With plaintiff's admission, the court need not consider the arguments raised by the defendant on this issue.

her termination. See *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1319 (10th Cir. 1992) (essence of a disparate treatment claim is intentional discrimination based upon a protected classification).

Absent direct evidence, plaintiff may use an indirect method to prove discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has the initial burden of proving her prima facie case of discrimination. *Id.* The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for [its conduct]." *Id.* If the defendant carries this burden, it shifts back to the plaintiff to prove that the reasons proffered "by the defendant were not [its] true reasons, but were pretexts for discrimination." *Id.* Despite the framework of shifting burdens, the ultimate burden of persuasion resides at all times with the plaintiff. *Id.*

■ The defendant initially argues that plaintiff cannot demonstrate a prima facie case of discrimination because she was replaced by a woman. We must disagree. A plaintiff need not show that the person hired to replace her was outside her protected class. *English v. Colorado Dept. of Corrections,* 248 F.3d 1002, 1008 (10th Cir. 2001). Accordingly, the court finds that the plaintiff has sufficiently demonstrated a prima facie case of discrimination.

■ With the finding that plaintiff has sufficiently demonstrated a prima facie case of discrimination, we turn to the other burdens of the McDonnell Douglas framework. The defendant asserts that it has identified a legitimate, non-discriminatory reason for terminating the plaintiff, i.e., poor performance and inability to get along with others. We agree with the defendant. Next, we must consider if plaintiff has put forth sufficient evidence to find that the defendant's reason is pretextual.

■ The court has conducted an exhaustive review of the materials presented to the court. Both sides have marshaled a wealth of evidence in support of their positions. After a careful review, the court has determined that summary judgment cannot be granted to the defendant on plaintiff's claim of discriminatory discharge. While the evidence of discrimination based on gender presented by plaintiff is hardly overwhelming, we do believe that it is sufficient to avoid summary judgment. The court believes that the evidence must be considered by a jury. Accordingly, defendant's motion for summary judgment on this aspect of the case shall be denied.

## IV.

Plaintiff seeks to strike certain portions of the affidavit submitted by Wayne L. Franklin. She contends that it fails to comply with Fed.R.Civ.P. 56(e) because it contains hearsay and attempts to set forth facts that would be inadmissible at trial. Specifically, plaintiff seeks to strike statements that are attributed to Governor Graves. The defendant argues that the statements noted by the plaintiff are not hearsay. The defendant asserts that the statements either indicate what Secretary Franklin heard or the motivation for his actions.

The court is not persuaded that the portions noted by the plaintiff need to be stricken. The court has not considered these statements for the truth of the matter asserted. Rather, the court has considered them as providing the motivation for Secretary Franklin's actions. Accordingly, plaintiff's motion to strike shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 127) be hereby granted in part and denied in part as set forth in the foregoing memorandum and order.

IT IS FURTHER ORDERED that plaintiff's motion to strike (Doc. # 132) be hereby denied.

IT IS SO ORDERED.