Harry HALLOWAY, Plaintiff–
Appellant,

v.

MILWAUKEE COUNTY, Frank
Liska, Patrick T. Sheedy, et
al., Defendants–Appellees.

No. 98–1429.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1998.

Decided June 11, 1999.

Robert E. Sutton, Milwaukee, WI, Nicholas C. Zales (argued), Zales Law Office, Milwaukee, WI, for Plaintiff–Appellant.

Robert G. Ott, Timothy R. Karaskiewicz (argued), Office of the Corporation Counsel, Milwaukee, WI, for Defendants–Appellees Milwaukee County, Frank Liska.

Jennifer Sloan Lattis (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees Patrick Sheedy, Thomas Doherty, Ronald Witkowiak.

Before POSNER, Chief Judge, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Harry Halloway, a judicial court commissioner in Wisconsin, filed this action against various employees of the state and county judicial systems and Milwaukee County. He alleged claims based on the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1983, and a Wis-

consin conspiracy statute. The district court granted summary judgment on all claims to all of the defendants. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

#### 1. The Duties of Commissioner Halloway

Harry Halloway is 82 years old and has been employed by Milwaukee County as a Judicial Court Commissioner since 1974. Commissioner Halloway has presided over Traffic, Intake, Criminal, Small Claims, Preliminary and Children's Courts. Wisconsin Statute § 757.69 delineates in detail the role played by a court commissioner. Commissioners are assigned some limited responsibilities that are performed traditionally by judges. For example, § 757.69(1) provides that, "[o]n authority delegated by a judge ... and with the approval of the chief judge of the judicial administrative district, a court commissioner ... may" issue summonses, arrest or search warrants, conduct initial appearances of persons arrested and set bail. Full-time court commissioners may conduct preliminary examinations and arraignments and, with the consent of both the state and the defendant, may accept guilty pleas. Subsection 1 of § 757.69 provides commissioners with similar authority over preliminary matters in other areas of law, such as traffic cases, county ordinance cases, small claims cases, family law cases, cases involving petitions for commitment and juvenile cases.

Subsection 2 of § 757.69 provides that judges may refer limited factual and legal issues to court commissioners. Subsection 3 states that court commissioners may, "under their own authority, ... issue subpoenas and attachments or other process to compel the attendance of witnesses, administer oaths and affidavits, take depositions and testimony when authorized by law or rule or order, ... certify and report the depositions and testimony," issue writs of habeas corpus, certiorari and alternative writs of mandamus that are "returnable before a judge," investigate and dispose of unclaimed property, conduct paternity proceedings in some situations, and "conduct supplementary hearings on the present financial status of a debtor." Wis. Stat. § 757.69(3).

#### 2. Commissioner Halloway's Allegations of Age Discrimination and Harassment

Commissioner Halloway brought this action against officials of the State of Wisconsin, Milwaukee County and officials of Milwaukee County.[1] He alleges that the defendants took adverse employment action against him because of his age, that they created a hostile working environment on account of his age, and that their actions deprived him of equal protection and due process of law.

Commissioner Halloway alleges that on November 12, 1992, and January 27, 1993, Chief Judge Sheedy ordered him to make rulings that Commissioner Halloway believed were contrary to law. Specifically, he alleges that Chief Judge Sheedy ordered him to send repeat defendants in operating-while-intoxicated cases to a private correctional facility before they had counsel to represent them. Commissioner Halloway believed that such action violated the defendants' Sixth Amendment right to counsel. Commissioner Halloway complained about Chief Judge Sheedy's order. He alleges that, after he complained about the Chief Judge's order and after he failed to comply with that order, the defendants began encouraging him to retire.

Commissioner Halloway further alleges that, on January 4, 1994, defendant Depu-

---

1. Patrick T. Sheedy, Thomas P. Doherty and Ronald R. Witkowiak are employees of the State of Wisconsin; Frank Liska and Bruce Harvey are employees of Milwaukee County.

ty Chief Judge Thomas Doherty, who was the acting chief judge at the time, asked him to retire and to take a magistrate position.[2] He alleges that, when he declined the offer, the Deputy Chief Judge became angry. After the conversation, Commissioner Halloway contacted Chief Judge Sheedy's son and asked him to reach Chief Judge Sheedy, who was vacationing in Florida at the time. When Chief Judge Sheedy returned, he promised Commissioner Halloway that he would remain in his current position throughout 1994.

On July 14, 1994, defendant Lead Commissioner Frank Liska encouraged Commissioner Halloway to accept Judge Doherty's recommendation. Commissioner Halloway further alleges that on July 27, 1994, Commissioner Liska "harassed" Commissioner Halloway by admonishing Commissioner Halloway to keep his courtroom door open to the public.

On August 15, 1994, Chief Judge Sheedy, contrary to his earlier promise that Commissioner Halloway could remain in the position that he was in, rotated Commissioner Halloway to a "floater" position, effective September 6, 1994. The parties dispute whether this position was created for Commissioner Halloway. Commissioner Halloway was initially told that he would be assigned a former utility room without a separate telephone line as his chambers. After Commissioner Halloway complained, he was given a different office that he found to be "very nice." R.32, Ex.D at 219 (Halloway deposition). Commissioner Liska and two other commissioners have subsequently used the office that Commissioner Halloway rejected. For a brief time after Commissioner Halloway moved into the new office, he had no clerical support, no name plate and no computer access. He was also told that he would receive daily assignments from a

deputy sheriff, or that the assignments would be taped to his door. His previous courtroom reporter was reassigned. However, the other commissioners who rotated into the small claims or "floater" position were similarly not allowed the same courtroom reporter that other commissioners were allowed. Since that time, Commissioner Halloway has rotated into other divisions.

Commissioner Halloway also claims that on January 3, 1995, Commissioner Liska "badgered" him about retiring. Commissioner Liska said to Commissioner Halloway, "Why don't you retire, I would retire if I could" and "Will it take a medic to carry you off the bench?" Commissioner Halloway replied that it would take an undertaker, to which Commissioner Liska responded, "We're planning big things for you." R.43, ¶ 19.

While Commissioner Halloway was presiding in Traffic Court on February 8, 1995, Commissioner Liska ordered Commissioner Halloway to leave and refused to explain why. The parties now agree that this action was taken because Commissioner Liska believed that Commissioner Halloway had reset bail for bailees whose bail had already been set. The tense exchange led Commissioner Halloway to suffer an anxiety attack and he required hospitalization. The next day Commissioner Liska joked about Commissioner Halloway's having a heart attack. In response to a question regarding whether Commissioner Halloway had died, Commissioner Liska responded that he "wasn't that lucky." R.32, Ex.F at 15.

Commissioner Halloway filed an age discrimination complaint on March 5, 1995, with the Equal Rights Division of what was then known as the Department of Industry, Labor and Human Relations of

---

**2.** Judge Doherty disputes Commissioner Halloway's characterization of his proposal to Commissioner Halloway. Judge Doherty claims that he merely told Commissioner Halloway that he would be rotated into a "floater" position, and that he never mentioned retirement. Because we are reviewing a summary judgment dismissal, however, we accept Commissioner Halloway's version of the facts.

the State of Wisconsin. On June 14, 1996, The Equal Rights Division issued an initial finding of probable cause on Commissioner Halloway's discrimination complaint against Milwaukee County, Chief Judge Sheedy and Commissioner Liska.

Commissioner Halloway alleges that he has also been the subject of harassment after commencement of this lawsuit. As an example, he claims that the defendants engaged in monitoring his activity in the courtroom and the amounts of bail that he set. Finally, in his affidavit Commissioner Halloway alleged that Gary Barczak and George Rice had told him that some of the defendants had stated to Barczak and Rice that they wanted to force Commissioner Halloway from office. The district court excluded this evidence on hearsay grounds. Commissioner Halloway alleged that Rice, who was a former Milwaukee County Corporation Counsel office member, told Commissioner Halloway that Chief Judge Sheedy, Judge Doherty, Commissioner Liska and former district court administrator Witkowiak had discussed how to force Commissioner Halloway to retire so that they could create a position for George Greene. Greene had recently lost his judgeship in an election. Commissioner Halloway also claims that Barczak, who is the former Milwaukee Clerk of Courts, stated that he heard Chief Judge Sheedy, Judge Doherty, Commissioner Liska and former justice system review coordinator Harvey discuss how to force Commissioner Halloway out of office.

## B.  The Decision of the District Court

The court initially excluded as hearsay the statements by Barczak and Rice. The court rejected the argument that the statements were not hearsay because they were made by an agent in the scope of his agency under Federal Rule of Evidence 801(d)(2)(D). The court reasoned that "in the employment discrimination context, a statement concerning the employer's reasons for the adverse action is admissible only if the speaker was involved in the

decision-making process on which he spoke." Mem. Op. at 2 n. 1. There was no evidence that Barczak or Rice had decisionmaking authority.

The court then held that there was not sufficient direct evidence of age discrimination. Commissioner Halloway had not pointed to any discriminatory statements and he did not demonstrate a link between his age and the alleged adverse actions. Remarks suggesting that a plaintiff should retire do not indicate age discrimination, the court noted. The court also held that there was insufficient evidence of age discrimination under the *McDonnell Douglas* framework. Commissioner Halloway's unsupported assertions that other commissioners were treated more favorably were inadequate to establish a prima facie case.

The court next rejected Commissioner Halloway's hostile work environment claim. There was no evidence that any of the alleged hostile acts were related to Commissioner Halloway's age. Moreover, the court stated that there was no evidence that the harassment unreasonably impeded Commissioner Halloway's work performance or created an intimidating, hostile or offensive work environment.

The court also rejected the equal protection claim, noting that the method of proof for that claim is similar to the method of proof under the ADEA. Finally, the court held that, because Commissioner Halloway had not lost any property interests, he could not state a claim under the Due Process Clause.

## II

## DISCUSSION

### A.  Exclusion of Affidavit as Hearsay

Commissioner Halloway contends that the district court erred in excluding portions of his affidavit as hearsay. In those portions of his affidavit, Commissioner Halloway stated that Barczak and Rice told him that they had heard some of the defendants discussing how they could "get

rid of" Commissioner Halloway and force him to retire. R.43, ¶¶ 39–40. We initially note that the issue here is one of hearsay within hearsay: Commissioner Halloway is alleging that someone else told him what another group of people said. *See* Fed. R.Evid. 805.[3] Our focus must be on the "outer layer" of the hearsay.[4]

■ The district court did not abuse its discretion in deciding that the statements made to Commissioner Halloway by Barczak and Rice are hearsay; they do not come within the ambit of Federal Rule of Evidence 801(d)(2)(D). That Rule states that a statement is not hearsay if it is "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D); *see Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 733 (7th Cir. 1998); *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Commissioner Halloway contends that Barczak and Rice were liaisons to Chief Judge Sheedy, and therefore they were acting within their agency when they made statements to Commissioner Halloway. However, the record does not reveal that either Barczak or Rice acted within the scope of his duties in conveying to Commissioner Halloway the substance of the defendants' conversation. Moreover,

**B. The Age Discrimination Claim**

■ To establish an ADEA discrimination claim, Commissioner Halloway may rely on either direct or indirect evidence of discrimination. He argues that there is direct evidence in this case because of the comments made by the deputy chief judge that he should retire. However, as this court has previously noted, requests that an employee retire are not necessarily a reference to the employee's age. *See Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1330 (7th Cir.1995).[5] Moreover, the comment was not made by Chief Judge Sheedy, who later made the decision to rotate Commissioner Halloway into the small claims/floater position. Such stray remarks cannot serve as direct evidence of discriminatory intent with respect to the employment actions about which Commissioner Halloway complains. *See O'Connor v. DePaul Univ.*, 123 F.3d 665, 671–72 (7th Cir.1997).

■ Commissioner Halloway also fails to establish an ADEA claim using the *McDonnell Douglas* burden-shifting analysis.[6] To establish a prima facie ADEA claim under *McDonnell Douglas*, Commissioner Halloway must show that (1) he was more than forty years old; (2) he per-

---

3. Rule 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R.Evid. 805.

4. We note that we are not concerned here with the "inner" layer of possible hearsay— the statements made by the defendants to Rice and Barczak. Those statements are not hearsay because they are made by party opponents. *See* Fed.R.Evid. 801(d)(2)(A).

5. *See also Ziegler v. Beverly Enterprises–Minnesota, Inc.*, 133 F.3d 671, 676 (8th Cir. 1998); *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 247 (6th Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). We

note that the Ninth Circuit has apparently considered an employer's suggestion that an employee retire as evidence of discriminatory intent. *See Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1108, 1112 (9th Cir.1991). However, the employer in that case "made other derogatory remarks indicating age ... bias," including a reference to the plaintiff as an "old warhorse" and referring to her students as "little old ladies." *Id.* at 1112. Therefore, *Sischo–Nownejad* is distinguishable.

6. Our rejection of the ADEA claim also leads to our rejection of Commissioner Halloway's equal protection claim brought pursuant to 42 U.S.C. § 1983. A similar analysis applies to both types of claims. *See Dugan v. Ball State Univ.*, 815 F.2d 1132, 1135–36 (7th Cir.1987).

formed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) younger employees were treated more favorably. *See Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 134 (7th Cir.1993). Commissioner Halloway has failed to demonstrate that he meets the latter two prongs.

Commissioner Halloway did not suffer from an employment action that is typically considered an adverse employment action under the ADEA: He was not fired or demoted, nor was his pay decreased. Instead, he complains that he was briefly assigned to offices he did not like, that he was rotated into a small claims/floater position created just for him, and that he was not provided adequate support staff or the materials necessary to perform his job. While such actions, if severe enough, may be actionable, "a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady*, 993 F.2d at 136.

Initially, we note that the record, even when read in a light most favorable to Commissioner Halloway, does not fully support his contentions. He was rotated into another position. However, both prior to and after the rotation about which Commissioner Halloway complains, such rotation was common for many commissioners. Moreover, contrary to Commissioner Halloway's contentions, he was not rotated into a position that was created solely for him. In his deposition, Commissioner Halloway admits that other commissioners had been previously rotated into the same position.[7] Further testimony indicates that, although the position was not always filled due to lack of available staff, it was not a new position. Additionally, Commissioner Halloway was later rotated away from the small claims/floater position and into other positions.

Commissioner Halloway also complains about the short term failure to provide him with the offices, staff and equipment that he felt he deserved. However, he admits that, when he complained, he was given offices that he found to be "very nice." Certain commissioners—including one of the defendants in this lawsuit—have subsequently used the offices originally assigned to Commissioner Halloway. Moreover, the reassignment of his courtroom deputy was no different than what had happened to other commissioners placed in the small claims position.

When Commissioner Halloway's factual assertions are pared down to those actually supported by the record, it is clear that he did not suffer from an adverse employment action.[8] As part of the regular rota-

---

7. We note that Judge Doherty made the ambiguous statement in his deposition that Commissioner Halloway's position was a new floater position that included small claims work and a general floating assignment. However, Commissioner Halloway admitted in his deposition that two commissioners had served in the floating position prior to Commissioner Halloway:

Q. Did you know that Commissioner Janowiak had served as a floater before you?
A. Yes.
Q. And did you know that Commissioner Michor had served as a floater after Commissioner Janowiak?
A. Yes. Yes.
Q. And that you followed as a floater following Commissioner Michor?
A. I followed Janowiak.
R.32, Ex.D at 149.

8. Because any actions taken against Commissioner Halloway did not affect the terms and conditions of his employment, and because any harm to his dignity was insufficient to deprive him of a property interest, we also affirm the district court's rejection of his due process claim. Commissioner Halloway does not identify any entitlement that he was denied.

We also note that Commissioner Halloway has not alleged that any of the actions of which he complains as giving rise to his due process and equal protection claims were based on County policy or custom. This omission also requires dismissal of those claims with respect to the County. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

tion of commissioners, Commissioner Halloway was placed in a position that had been held by other commissioners before him. Although there were short term and other minor adjustments made to his work environment, such adjustments did not rise to the level of adverse employment actions.

■ We also agree with the district court that Commissioner Halloway has failed to establish that he was treated differently from younger commissioners. As stated above, his claim that he was the only commissioner rotated into the small claims/floater position is rebutted by his own admission in his deposition. Commissioner Halloway's rotation into, and then out of, the position he complains about was not different from the rotations that faced many other commissioners. Moreover, office reassignment typically accompanied rotation. And, as indicated above, the offices that Commissioner Halloway did not accept have been used by other commissioners since he complained about them. We therefore cannot accept Commissioner Halloway's discrimination claim.[9]

## C. The Hostile Work Environment Claim

■ Commissioner Halloway submits that the defendants' request that he retire, the decision to rotate him into the small claims/floater position, the defendants' harassment over his courtroom door and court rulings created a hostile work environment on account of his age.

We note initially that this court has not had the occasion to determine whether a hostile work environment claim may be recognized under the ADEA. Our colleagues in the Sixth Circuit have decided that such claims are cognizable under the ADEA. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir.1996) (stating that "we find it a relatively uncontroversial proposition that such a theory is viable under the ADEA"). Because we believe that the evidence in this case would not support such a claim, we need not decide in this case whether such claims are cognizable. *See Burns v. AAF–McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999) (assuming, without deciding, that hostile work environment claims are cognizable under the ADEA); *United States EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1248–49 & n. 7 (11th Cir.1997) (addressing merits of ADEA hostile work environment claim but not deciding whether such a claim is cognizable).

We do not think that there is sufficient evidence to support a jury verdict that the alleged harassment was based on Commissioner Halloway's age. Commissioner Halloway's most direct evidence that the harassment was based on age was the references to Commissioner Halloway's retirement; as we noted earlier, however, there is insufficient evidence that those statements were age-based. Moreover, the defendants' statements were not "se-

9. Commissioner Halloway argues that the district court committed error by not considering a finding of probable cause for discrimination by the Equal Rights Division of Wisconsin's Department of Industry, Labor and Human Relations. Administrative findings are sometimes admissible as evidence. *See Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Nevertheless, the district court retains significant discretion as to whether such material ought to be admitted. *See Tulloss v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 153–54 (7th Cir.1985); Fed.R.Evid. 803(8)(c) (Notes of Advisory Committee on Proposed Rules). We cannot say that the district court abused its discretion in failing to conclude

that the state determination of probable cause created a genuine issue of triable fact. The Equal Rights Division's initial determination explicitly states that the finding would not even be considered in the state hearing on the matter. Moreover, for the most part, the finding does not look past the bare allegations made in the complaint. Commissioner Halloway does not contest that the conclusory assessment of the investigation was not based on sworn affidavits or depositions from both sides. Moreover, even if we were to assume the accuracy of the report's summary conclusions, it would not, for the reasons stated in this opinion, amount to a genuine issue of triable fact as to whether a violation of the ADEA took place.

vere or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Although Commissioner Halloway subjectively may have been offended by the comments about his retirement, failure to keep his courtroom door open, and practice of resetting bail, we cannot say that such comments were, when assessed objectively, sufficiently severe to create a claim. As we have previously explained, moreover, rotation into a different position was common for many commissioners. Therefore, the comments and conduct of which Commissioner Halloway complains are " 'too tepid or intermittent or equivocal to make a reasonable person believe that [he]

has been discriminated against' " on the basis of age. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir.1997) (quoting *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir.1996)).

## Conclusion

 For the foregoing reasons, we affirm the judgment of the district court.[10]

Affirmed.

---

10. At the direction of the court during oral argument, the parties briefed whether *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), renders the ADEA inapplicable to Commissioner Halloway. Both parties submit that *Gregory* does not apply and that the ADEA applies to Commissioner Halloway. We agree.

In *Gregory*, the Supreme Court considered whether a mandatory age limit applicable to judges and contained in the Missouri constitution violated the ADEA. Noting that application of the ADEA would be an extensive interference with the state's authority to define qualifications for its government officials, the Court held that Congress is required to make a clear indication of its intent to subject states to such interference. The Court could find no such clear indication of congressional intent in the ADEA because the "policymaker" exemption in the ADEA could be read to exclude judges from ADEA coverage:

> The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, *or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.* The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f) (emphasis added). Relying on the italicized language, the Court held that Congress did not clearly indicate that judges

would be considered employees and therefore subject to the ADEA. Although it did not find the italicized language to apply unambiguously to judges, the Court held that the exception from ADEA coverage could be read to apply to judges.

Both Commissioner Halloway and the defendants submit that Commissioner Halloway is protected by the ADEA because section 630(f) explicitly excludes from the "policymaker" exemption employees who are in the civil service; Wisconsin law clearly states that commissioners like Commissioner Halloway are in the civil service: "Any person qualified and acting as a judicial court commissioner on August 1, 1978, shall be deemed a full-time court commissioner and shall continue in the classified county civil service, but any new appointee shall be in the unclassified (exempt) civil service." Wis. Stat. § 757.68(1). Commissioner Halloway was a commissioner as of August 1978, so he meets the requirements of the provision. Therefore, even if the matter had not been waived by the defendants by their failure to raise it in the district court, the plain language of § 630(f) makes it clear that the "policymaker" exemption does not apply to Commissioner Halloway.

In *Gregory*, having decided the case on the basis of statutory construction, the Court did not have to reach whether the Tenth Amendment would bar the ADEA from applying to state judges. *See Gregory*, 501 U.S. at 464, 111 S.Ct. 2395 (stating that "the authority of the people of the States to determine the qualifications of their government officials may be inviolate" and "[a]pplication of the plain statement rule thus may avoid a potential constitutional problem"). This issue was not raised before the district court and therefore is waived.