**Marta O'NEILL, Plaintiff,**

v.

**INDIANA COMMISSION ON PUBLIC RECORDS, and The State of Indiana, Defendants.**

**No. IP 99–1160–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 17, 2001.

---

Michael C. Kendall, Kendall Law Office, Indianapolis, IN, for plaintiff.

Theresa A. Stevens, Office of Atty. Gen., Indianapolis, IN, for defendants.

## ENTRY REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

TINDER, District Judge.

The Plaintiff, Marta O'Neill, brings claims against the Defendants, the Indiana Commission on Public Records (the "Commission") and the State of Indiana ("Indiana"), alleging that the Defendants discriminated against the Plaintiff on account of her gender and retaliated against her for opposing such discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The Defendants filed a

motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, which the Plaintiff opposes. The court, having considered the motion and the submissions of both parties, decides as follows.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories and, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). An entry of summary judgment is mandated if, after adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To oppose a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, all facts are construed in the light most favorable to the nonmoving party (Marta O'Neill) and all reasonable inferences are drawn in favor of that party. *See Bellaver v. Quanex Corp.,* 200 F.3d 485, 491–92 (7th Cir.

2000) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND [1]

In October 1989, the Plaintiff, Marta O'Neill ("O'Neill"), began her employment as Deputy Director with the Indiana Commission on Public Records (the "Commission"). O'Neill was hired by the Commission's Director, Gerald Handfield ("Handfield"). Handfield, as Director, is an appointee of the Governor of Indiana. Handfield negotiated with O'Neill to create the position of Deputy Director.

O'Neill served as the only Deputy Director of the Commission, and her direct supervisor was Handfield. Under O'Neill were five to seven division heads who reported officially to Handfield on organizational matters. However, as a practical matter, the division heads reported day-to-day operational matters to O'Neill. O'Neill's responsibilities included policy-making, budget planning, purchasing and staff supervision. O'Neill assumed many of the Director's responsibilities in the absence of the Director.

During her term of employment with the Commission, O'Neill witnessed various acts within the agency which she deemed to be unfair. Several staff members had complained to her regarding promotions and job assignments. In addition, O'Neill felt that Handfield and male division heads were treating her improperly and "not taking her seriously." (O'Neill Dep. at 32.) By 1996, O'Neill had formed the opinion that the Agency maintained an environment negative towards women and that a glass ceiling existed.[2]

---

**1.** The facts herein are undisputed unless otherwise noted. All facts and reasonable inferences drawn from those facts are taken in the light most favorable to the Plaintiff, Marta O'Neill. If facts are disputed, the court takes

to be true the Plaintiff's version for purposes of summary judgment.

**2.** Because the court determines below that O'Neill's gender discrimination claim is time

In August of 1996, the Commission listed seven potential candidates for reclassification, which entitles the candidates to a pay increase. In order to be considered for reclassification, the potential candidate must submit forms and have his or her supervisor complete a Job Analysis Questionnaire ("JAQ"). O'Neill completed her forms and requested that Handfield complete her JAQ. Over the next couple of months, O'Neill made repeated requests that Handfield complete her JAQ to no avail.

In September of 1996, O'Neill attended a heated meeting in which she swore at a subordinate employee. All other employees involved were given written warnings, while O'Neill received a verbal reprimand from Handfield. As a result of her growing concerns with the Commission and Handfield's continued failure to complete her JAQ,[3] O'Neill notified Handfield of her decision to seek employment elsewhere in October 1996. Handfield offered his assistance in the form of a recommendation letter. For the next few months, O'Neill continued on as Deputy Director while seeking new opportunities.

In June of 1997, Handfield left the country for the month. During this month, O'Neill reprimanded an employee, Mr. Dick Graves, for communication and attendance problems. O'Neill also wrote a memorandum to division head Alan January on his failure to keep up with his duties. Graves and January were upset by O'Neill's conduct, causing Mr. Chuck Coffey to intervene and confront O'Neill regarding her "abusive" handling of the matters. O'Neill objected to Coffey's intervention because he was interfering with her operation of the Commission in Handfield's absence.[4]

Around June 16, 1997, while Handfield was still outside the country, O'Neill formally voiced her suspicions of gender discrimination to Ms. Donetta Moorman of the State Personnel Department ("State Personnel") as a result of a confrontation with Coffey. At the request of Moorman, O'Neill began drafting up a memorandum outlining her suspicions of gender discrimination and possible witnesses within the Commission. Moorman also advised O'Neill of her right to file an Equal Employment Opportunity Commission ("EEOC") charge.

Handfield returned on June 30. On July 1, Handfield requested a meeting with O'Neill. According to O'Neill, Handfield inquired into O'Neill's outside job efforts and a possible date of resignation.[5] O'Neill discussed her available options and the likelihood of receiving offers. Handfield then suggested meeting on July 3 to further discuss the matter, to which O'Neill agreed.

After the meeting, O'Neill attempted to contact Moorman at State Personnel. Unable to speak with Moorman, O'Neill spoke with another staff member who informed

barred, detailed factual allegations regarding gender discrimination have been omitted.

**3.** At some point in approximately March 1997, the reclassification forms and JAQs for the other candidates were submitted, yet O'Neill's was not because Handfield had failed to complete her JAQ. (O'Neill Dep. at 75.)

**4.** The record is not clear as to what position Coffey holds in the Commission, but he is presumably a division head. The Defendants argue that Coffey was supposed to share control of the Commission with O'Neill in Handfield's absence, which O'Neill disputes.

**5.** The Defendants claim that Handfield informed her that she either needed to resign or be terminated, but agreed to delay the meeting until July 3 so that O'Neill could speak with State Personnel. O'Neill disputes this claim.

her of her right to counsel and to tape the July 3 meeting if she wished. State Personnel was unable to provide a staff member to attend the meeting. The following day, July 2, O'Neill filed her memorandum with the State Personnel alleging gender discrimination. State Personnel promptly notified Handfield the same day that O'Neill had filed a formal charge.

O'Neill met again with Handfield and his administrative assistance, Judy Clayton, on July 3. The meeting on July 3 was taped by O'Neill. At the beginning of this meeting, Handfield stated that "while I was gone there was [sic] several issues that crept up ... they are not an issue at this meeting." (Defs.' Br., Ex. F at 1.) Handfield reiterated the Commission's need for a definitive date of resignation, and explained to O'Neill the differences between resignation and termination. O'Neill refused to provide a definitive resignation date, and Handfield handed her a termination letter.

On April 28, 1998, O'Neill filed a charge of discrimination with the EEOC alleging gender discrimination and retaliation. The charge in particular suggested a continuing violation of gender discrimination culminating in the abandoned reclassification, and that her termination on July 3 was retaliation for filing a complaint on July 2 with State Personnel. Subsequent to the EEOC charge, O'Neill filed a complaint in this court against the Commission and the State of Indiana ("Indiana") alleging gender discrimination and retaliation in violation of Title VII. The Defendants denied all claims, and further affirmatively defended that the complaint fails to state a claim for relief, O'Neill did not timely and adequately exhaust administrative remedies, the claims in the complaint are untimely, and O'Neill failed to mitigate her damages.

The Defendants filed a motion for summary judgment on September 6, 2000. The Defendants argue that O'Neill's position as Deputy Directory is a not an "employee" within the meaning of Title VII. In the alternative, the Defendants argue that O'Neill's charge with the EEOC was untimely and therefore her suit is barred. Finally, the Defendants argue O'Neill has failed to demonstrate that the Commission's legitimate business decisions regarding her employment were a pretext for unlawful discrimination. O'Neill opposes the motion, which is now pending before this court. The court will address each of the Defendants' arguments in turn.

## ANALYSIS

■ First, the Defendants raise a threshold issue in summary judgment that, if granted, would obviate the need to examine O'Neill's gender discrimination and retaliation claims. Under Title VII, an employer commits an "unlawful employment practice" when he discriminates against an employee on the basis of her gender, or retaliates against her for opposing unlawful discrimination. 42 U.S.C. § 2000e–2(a) and 3(a). Any "person aggrieved" may bring suit under Title VII so long as they allege that the employer discriminated or retaliated against an "employee." 42 U.S.C. § 2000e–5. In this case, O'Neill has brought suit alleging that the Defendants discriminated and retaliated against her as Deputy Director—like most plaintiffs she avers that she is both the "person aggrieved" and the "employee." The Defendants contend that the position of Deputy Director is not an "employee" within the meaning of Title VII, and thus O'Neill is not entitled to relief under the statute. An "employee" under Title VII is defined in pertinent part as follows:

The term "employee" means an individual employed by an employer, *except that*

*the term "employee" shall not include* any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level* or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C. § 2000e(f) (emphasis added). Although the definition of employee is broad, it contains an exclusion for high level members of state and local government. The Defendants argue the position of Deputy Director falls within this exclusion, providing a dispositive basis for summary judgment.

As originally enacted, Title VII did not apply to state and local governments, but only to private employers. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 448–49, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In 1972, Congress amended Title VII to include state and local governments, and in connection with this amendment changed the definition of "employee" to exclude high level government employees. *Id.* The logic of this exclusion is to avoid federal interference in the selection of key public officials by the States. *See Halloway v. Milwaukee County,* 180 F.3d 820, 828 n. 10 (7th Cir. 1999) (discussing identical definition under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630(f)). As Congress noted, "[t]he exemption for policy making advisors ... is narrowly construed and *intended to cover only those appointees who 'are chosen by the Governor* or the mayor or the county supervisor, whatever the elected official is, and who are in a close personal relationship and an immediate relationship with him. Those are his first line advisors.' " 118 CONG. REC. 4492–93 (1972), *quoted in Anderson v. City of Albuquerque,* 690 F.2d 796, 801 (10th Cir.1982) (construing exclusion to require appointment by elected official). The House and Senate Conference Report explained the objective of this exclusion was to: "exempt elected officials and members of their personal staffs, and *persons appointed by such elected officials as advisers or to policymaking positions* at the highest of levels of the departments or agencies of State or local governments, such as cabinet officers...." H.R.REP. No. 92–238, Joint Explanatory Statement of Managers as the Conference on H.R. 1746 (1972), *reprinted in* 1972 U.S.C.C.A.N. 2180 (emphasis added). The intent of Congress was that "this exemption shall be construed narrowly." *Id.* Although both sides agree that the position of Deputy Director is a "policymaker," the parties disagree as to whether the exclusion requires that the Deputy Director be directly appointed by an elected official.

This appears to be an issue of first impression before this court and the Seventh Circuit. In the Seventh Circuit, the test for determining whether an individual is a "policymaker" and therefore not an "employee" under Title VII is the same test applied by the Supreme Court, first delineated in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), to determine whether an employee is exempt from the First Amendment prohibition on politically motivated hiring and firing. *Americanos v. Carter,* 74 F.3d 138, 144 (7th Cir.1996). The definition under Title VII is identical to that of the ADEA, and the Seventh Circuit applies *Elrod* with equal force to each statute. *Id.* at 143. The Seventh Circuit explained the *Elrod* test as "whether the position held by the individual authorizes, either directly or in-

directly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Id.* at 141. In determining this issue, the district court is to review the " 'powers inherent in a given office,' rather than the actual functions of the occupant of that office performed." *Americanos,* 74 F.3d at 141 (quoting *Heck v. City of Freeport,* 985 F.2d 305, 309 (7th Cir.1993)). However, in all Seventh Circuit opinions applying *Elrod* to Title VII or ADEA claims, the plaintiff was a direct appointee of an elected official. *See Halloway v. Milwaukee County,* 180 F.3d 820, 828 n. 10 (7th Cir.1999) (judicial court commissioner not exempt from ADEA even though appointed by elected official because position subject to state civil service laws); *Americanos,* 74 F.3d at 144 (exempting deputy attorney generals, under Title VII and the ADEA, who are appointed by elected attorney general); *Heck,* 985 F.2d at 310 (exempting general inspector under ADEA who was appointed by mayor).[6] In each case, the question faced by the court was not whether the person was an "appointee" but "at a policymaking level."

This conclusion is further supported by the Seventh Circuit's decision in *Halloway,* where the court recognized that "employee" under the ADEA includes those covered by civil service laws, even though this is not the analysis under the *Elrod* test. *Halloway,* 180 F.3d at 828 n. 10. In *Halloway,* a Wisconsin judicial court commissioner brought suit alleging age discrimination under the ADEA. *Id.* at 821. A commissioner is appointed by the chief judge of the county and, if appointed by a certain date, is subject to state civil service laws. *Id.* at 828 n. 10; *see also* WIS. STAT. § 757.68. The Seventh Circuit, accepting that *Gregory* would control the application of the *Elrod* test, nevertheless concluded that the position was not excluded because it was subject to state civil service laws. *Id.* The decision in *Halloway* suggests that while the test as to whether a position is a policymaker is the *Elrod* test, the test operates within the confines of the statutory language for Title VII analysis. For the following reasons, the court concludes that the policymaker must be directly appointed by an elected official.[7]

First, the court finds persuasive the Second Circuit's decision in *Tranello v. Frey,* 962 F.2d 244 (2d Cir.1992), *cert. denied sub nom., County of Monroe v. Tranello,* 506 U.S. 1034, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992). In *Tranello,* a deputy county attorney brought suit against various county executives under the ADEA. *Id.* at 245. The district court denied the defendants

---

**6.** *See also Gregory v. Ashcroft,* 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (exempting state judges under ADEA who are appointed by elected governor); *Pleva v. Norquist,* 195 F.3d 905, 917 (7th Cir.1999) (exempting zoning appeals board member under ADEA because appointed by mayor); *Bibbs v. Newman,* 997 F.Supp. 1174, 1185 (S.D.Ind. 1998) (exempting deputy prosecuting attorneys who are appointed by elected prosecuting attorney). *See also Roche v. City of Chicago,* 24 F.3d 882, 886 n. 5 (7th Cir.1994) (declining to address issue because city waived it on appeal).

**7.** In rendering this decision, the court joins two other district courts in this circuit which have come to the same conclusion, *Braaksma v. Wells Cmty. Hosp.,* 98 F.Supp.2d 1026, 1029 (N.D.Ind.2000) (CEO of county hospital hired by board of trustees, who were in turn appointed by elected county executive, was not exempt employee under ADEA); *Deneen v. City of Markham,* 1993 WL 181885, 62 Empl. Prac. Dec. P 42490, 76604 (N.D.Ill. 1993) (exempting fire chief who is appointee of mayor but declining to exempt deputy fire chief who "is accountable exclusively to the fire chief, who is not an elected official"), and is in accord with the EEOC's position, *see* EEOC COMPLAINCE MAN. § 2.III.A (2000).

summary judgment on the basis of the policymaker exception. *Id.* On interlocutory appeal, the County argued that as deputy county attorney, Tranello was an appointee on a policymaking level. *Id.* at 248. The position of deputy county attorney was appointed by the county attorney, who in turn was appointed by the county executive, an elected official. *Id.* at 249. The Second Circuit sided with Tranello in concluding that the position must be directly appointed by the elected official. *Id.* at 250.

The court based its decision in part on the language of the statute. The court separated the definition into four categories: "[i] any person elected to public office ..., or [ii] any person chosen by such [elected] officer to be on such officer's personal staff, or [iii] *an appointee on the policymaking level* or [iv] an immediate advisor with respect to ... powers of the office." *Id.* at 249 (alterations in original) (emphasis added) (quoting 29 U.S.C. § 630(f)). The court concluded that "the placement of category [iii] in the middle of a statute primarily exempting elected officials from ADEA coverage strongly indicates that this provision must be read to require appointment by an elected official." *Id.* In addition, great reliance was placed upon the Conference Report quoted above, which commented that the exemption applied to "persons appointed by such elected officials." *Id.* In reaching its decision, the court rejected "as overly strained" the argument by the County that the county attorney had to seek approval from the county executive when filling the deputy position and therefore the deputy was an "appointee of an elected official." *Id.* at 250. Finding that the Supreme Court's decision in *Gregory v. Ashcroft,* 501 U.S.

452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), did not alter the analysis, the court concluded that only those appointed directly by an elected official fall within the exclusion. *Id.* at 250–51.[8]

More notably, the Supreme Court, in addressing whether appointed state judges fall within the identical definition under the ADEA, also segmented the exception into four prongs. *Gregory,* 501 U.S. at 465, 111 S.Ct. 2395. Along with elected officials, the following employees are excluded from coverage: "(1) 'any person chosen by such [elected official] to be on such officer's personal staff'; (2) *'an appointee on the policymaking level';* and (3) 'an immediate advisory with respect to the exercise of the constitutional or legal powers of the office.'" *Id.* (emphasis added) (quoting 42 U.S.C. § 2000e(f)). The Court's four-prong approach provides guidance and is identical to the Second Circuit's approach in *Tranello.* Justice White, in his concurrence, further emphasized this segmentation of the definition and the narrowness of the exception: "A parsing of that definition reveals that it excludes ... four types of (noncivil service) state and local employees: (1) persons elected to public office; (2) the personal staff of elected officials; (3) *persons appointed by elected officials to be on the policymaking level;* and (4) the immediate advisers of elected officials with respect to the ... legal powers of the officials' offices." *Id.* at 481, 111 S.Ct. 2395 (White, J. concurring) (emphasis added).

Finally, the Seventh Circuit appears to be heading towards a bifurcated analysis. Namely, the district court should apply *Elrod* to determine whether the position is

---

**8.** In *Butler v. N.Y. State Dep't of Law,* 211 F.3d 739 (2d Cir.2000), the Second Circuit recognized that the Seventh Circuit, unlike the Second, applied the *Elrod* test in the context of whether or not an employee was a policymaker. *Id.* at 746. However, this does not demonstrate that the Seventh Circuit has decided the question now before this court.

a policymaker, but limit the exclusion by Title VII's statutory language. The Seventh Circuit's discussion in *Halloway* demonstrates that although the position probably was a policymaker under *Gregory,* because the state civil service laws applied to the position it was not excluded from the definition of employee. *Halloway,* 180 F.3d at 828 n. 10. Moreover, in *Roche,* the Seventh Circuit recognized but declined to address the issue because the government had waived it. *Roche,* 24 F.3d at 886 n. 5. Both cases at the least suggest that the Seventh Circuit intends the district courts to apply a two-part analysis: (1) whether the employee was an appointee of an elected official; and (2) whether that appointee is a policymaker under *Elrod.*

■ In this case, the plaintiff maintained the position of Deputy Directory within the Commission. Under Indiana law, the Governor appoints the Director of the Commission. IND.CODE § 5–15–5.1–4(a). The Director, "subject to the approval of the governor and the budget agency, shall appoint such staff as necessary...." IND.CODE § 5–15–5.1–4(b). The position of Deputy Director is not a creature of state statute, but rather the collaborative design of Handfield and O'Neill. The Deputy Director position is accountable exclusively to and appointed by the Director, who is not an elected official. The court concludes that the position of Deputy Director is not "an appointee on a policymaking level" within the meaning of 42 U.S.C. § 2000e(f), and therefore O'Neill is entitled to seek relief under Title VII.

■ In the alternative, the Defendants argue that O'Neill failed to timely exhaust administrative procedures as a precondi-

tion of suit in federal court, and therefore is barred from bringing her gender discrimination and retaliation claims. Title VII requires that a plaintiff must first timely file a charge of discrimination with the EEOC as a precursor to an action in federal court. 42 U.S.C. § 2000e 5(f)(1); *Sharp v. United Airlines, Inc.,* 236 F.3d 368, 372 (7th Cir.2001). In Indiana, a deferral state, the charge must be filed within 300 days of the alleged unlawful action. 42 U.S.C. § 2000e-5(e)(1); *Sharp,* 236 F.3d at 372. "The 300–day limit ... begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, 'not when [she] determines that the injury was unlawful.'" *Sharp,* 236 F.3d at 372 (quoting *Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267 (7th Cir.1995)). Absent circumstances warranting equitable remedies, the untimeliness of the charge bars federal court action. *Id.*[9] In some instances, an unlawful act occurring outside the filing period may be linked with an act inside the period as a "continuing violation." *Place v. Abbott Labs.,* 215 F.3d 803, 807 (7th Cir.2000). However, to utilize the continuing violation theory, the plaintiff must allege an unlawful act within the period, and associate it with acts outside the period. *Id.*

In this case, O'Neill filed a charge of discrimination on April 28, 1998. To fall within the 300 day period, the adverse actions must occur on or after July 2, 1997. Accepting O'Neill's factual allegations as true, she argues that she was subjected to various acts of gender discrimination throughout her employment culminating in the failure of Handfield to submit the JAQ for her reclassification in March 1997.

9. In this case, equitable tolling is particularly inappropriate where State Personnel advised O'Neill to file a charge of discrimination with the EEOC in June 1997. *Thelen,* 64 F.3d at 268. Equitable estoppel is also inappropriate because no evidence has been offered to show the Defendants concealed any key information from O'Neill. *Id.*

Throughout O'Neill's factual assertions and in brief, it is clear that she became aware of gender discrimination against herself and others in the Commission in 1996, and that Handfield was not going to complete the JAQ as requested. In O'Neill's brief to the court, the most recent adverse action complained of as gender discrimination is Handfield's failure to complete the JAQ. O'Neill knew that her JAQ was not completed with the others-so much so that she informed Handfield that she was resigning because of such-in October 1996. The facts make clear that the other six employees had their paperwork filed in March 1997 and that O'Neill felt she was the victim of gender discrimination at the very latest by June 1997. Construing in the most liberal sense the facts as asserted by O'Neill and accepting the existence of a continuing violation, the point at which the adverse action had been taken and O'Neill knew she had been injured occurred in June 1997. This is simply outside the filing period. Therefore, O'Neill's charge of gender discrimination is untimely, and her subsequent claim in this court is barred.

■ However, O'Neill did timely file a charge of discrimination as to her retaliation claim. According to O'Neill, she did not become aware of her termination until the meeting on July 3, 1997. The Defendants argue that she became aware of her termination at the July 1 meeting. Taking the facts in the light most favorable to O'Neill, she received notice of her termination on July 3. Her termination is the adverse action giving rise to her retaliation

claim, and it occurred during the 300 day filing period. Therefore, O'Neill timely filed a retaliation charge and is not barred from bringing that claim in this court.

■ Finally, the Defendants argue that O'Neill has failed to raise a genuine issue of material fact as to her retaliation claim.[10] O'Neill alleges the Commission retaliated against her in violation of Title VII following her formal complaint to State Personnel.[11] The elements of the prima facie claim of retaliation under Title VII are: O'Neill engaged in statutorily protected activity; she suffered an adverse action; and a causal link exists between the protected activity and the adverse action. *See Johnson v. Univ. of Wis.-Eau Claire,* 70 F.3d 469, 479 (7th Cir.1995). To survive the Defendants' motion for summary judgment, O'Neill must demonstrate a genuine issue of fact exists as to each element of the prima facie case. Upon establishing a prima facie case, the burden then shifts to the Defendants to proffer a legitimate, non-discriminatory reason for its adverse action. *Talanda v. KFC Nat'l Mgmt., Co.,* 140 F.3d 1090, 1096 (7th Cir. 1998). If the Defendants successfully proffer a reason, then O'Neill must demonstrate that a genuine issue of fact exists as to whether this proffered reason is a pretext for discrimination. *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The parties appear to concede that O'Neill has estab-

10. Defendants also raised this issue as to the gender discrimination claim. Having disposed of the claim because of O'Neill's failure to timely file an EEOC charge, it is unnecessary to address this issue.

11. Under § 704(a) of Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees

... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

lished a prima facie case.[12]

The burden shifts to the Defendants to proffer a legitimate, non-discriminatory reason for the decision to terminate. As the Defendants state in their reply brief, they "have tendered significant evidence of an ongoing pattern of staff abuse as the legitimate, nonpretextual reason for O'Neill's termination." (Pl.'s Reply Br. at 4.) Specifically, after the September 1996 meeting in which O'Neill swore at a subordinate, she was on notice that continued abusive behavior towards employees would result in discipline; and that the incidents in June 1997 with Graves and Coffey constituted continued abusive behavior warranting termination. As the argument unfolds, O'Neill's failure to improve her behavior as evidenced by the June 1997 incidents is the legitimate business reason for discharge. The burden now rests with O'Neill to create a genuine issue that the proffered reason for her termination is a pretext for discrimination.

In examining whether a plaintiff establishes a genuine issue of pretext, the Seventh Circuit admonishes district courts not to " 'sit as a super personnel department to review an employer's business decision.' " *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir.2000) (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir.2000)). However, "[i]ndirect evidence of pretext showing that an employer's proffered reasons are not credible can include evidence that the reasons are without basis in fact, did not actually motivate the challenged action, or were insufficient to motivate the [action]." *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 379 (7th Cir.2000). O'Neill

may demonstrate pretext by showing Handfield "offered a phony reason," not by merely "demonstrating that [he] erred or exercised poor business judgment." *Ritter*, 231 F.3d at 1044. O'Neill argues that evidence exists which creates a genuine issue of pretext regarding the Defendants' proffered reason for termination.

O'Neill persuasively points to the transcript of the July 3 meeting with Handfield as evidence of pretext. At the beginning of this meeting, Handfield stated unequivocally that during June, while he was absent "there was [sic] several issues that crept up [which] are not an issue at this meeting." (Defs.' Br., Ex. F at 1.) As O'Neill points out, presumably Handfield is referring to the incidents with Graves and Coffey in June. The jury certainly may consider Handfield's statement to be dismissing the June 1997 incidents as irrelevant, which is entirely inconsistent with the Defendants' argument that those incidents were the basis for her termination. This inconsistency provides a factual dispute as to whether Handfield offered a phony reason for termination, which of course raises an issue of pretext. This is a genuine factual issue which must be decided by a jury, not by the court on summary judgment. Therefore, O'Neill successfully raises a genuine issue of material fact as to the pretextual nature of the Defendants' proffered business reason, and summary judgment is inappropriate as to the retaliation claim.

## CONCLUSION

The position of Deputy Director is an employee under Title VII and thus O'Neill is entitled to relief. However, since

---

**12.** O'Neill clearly engaged in statutorily protected activity when filing a formal complaint with State Personnel regarding gender discrimination on July 2, and she suffered an adverse employment action in the form of termination on July 3. Based on the temporal proximity of the protected activity to the adverse action, causation is easily established. *See Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 616 (7th Cir.2001).

O'Neill failed to timely file a charge of discrimination with the EEOC regarding her gender discrimination claim only, the Defendants are entitled to summary judgment on that claim. Yet, a genuine material issue remains as to whether the Defendants' proffered business decision for terminating her was a pretext for retaliation. As a result, the Defendants are not entitled to summary judgment on the claim of retaliation. The Defendants' Motion for Summary Judgment is **GRANTED** in part as to the gender discrimination claim and **DENIED** in part as to the retaliation claim.

Since the court need not and does not rely on either of the exhibits which are the subject of the Plaintiff's motion to strike, the motion is DENIED AS MOOT.

A telephonic conference will be set so that a trial date can be scheduled.